| | | |
|---|---|---|
| GARRETT A. FISK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:16-cv-00490-JDL |
| | ) | |
| MID COAST PRESBYTERIAN | ) | |
| CHURCH, PRESBYTERY OF | ) | |
| NORTHERN NEW ENGLAND, | ) | |
| EARLE WARREN, RICHARD | ) | |
| REESE, and DIANE HOPPE- | ) | |
| HUGO, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

Plaintiff Garrett A. Fisk filed a Complaint (ECF No. 1) on September 23, 2016 against Defendants Mid Coast Presbyterian Church ("the Church"), the Presbytery of Northern New England ("the Presbytery"), Earle Warren,[1] Richard Reese, and Diane Hoppe-Hugo, alleging violations of federal and state law relating to the termination of his employment with the Church. The Defendants have filed motions to dismiss the claims against them. ECF No. 14; ECF No. 15; ECF No. 21.

## I. BACKGROUND

The relevant facts as stated in the Complaint are as follows. Fisk began working with the Church in June 2012 as a temporary employee, placed through a staffing agency. In January 2013 Fisk became a direct employee of the Church. At

---

[1] The Complaint identifies Defendant Warren as "Earl Warren," but Plaintiff recognized in his opposition to Warren's Motion to Dismiss that the correct spelling of Warren's first name is "Earle." ECF No. 24 at 1 n.1.

all relevant times, Diane Hoppe-Hugo worked for the Church as a pastor, and was Fisk's supervisor. Richard Reese was a member of the Church and served on the Church's Personnel Committee. Earle Warren was a member of the Church and volunteered with the Church in various roles. The Presbytery is a non-profit, religious organization based in New Hampshire that oversees Presbyterian Church congregations in Maine, and provides resources and services for those congregations.

The Complaint alleges that, in December 2012, while Fisk was working at the Church through the staffing agency, Warren sent Fisk an email offering oral sex. Fisk informed Hoppe-Hugo that this solicitation had occurred. In April 2013, Warren gave Fisk an unwanted massage in the Church's office. Fisk informed Hoppe-Hugo of this unwanted touching. In August 2013, Warren pinched Fisk's nipples while Fisk was talking on the phone in the Church's office. Hoppe-Hugo was again informed by Fisk of the unwanted touching.

Fisk concluded that his conversations with Hoppe-Hugo on the topic had not led to any investigation or resolution. He therefore approached the Church's Personnel Committee in April 2014 to complain about Warren's conduct. He told the members of the Personnel Committee that he needed more protection because Hoppe-Hugo had not done enough to address his concerns. Reese, who was a member of the Personnel Committee, suggested that Fisk should seek another job if he was no longer comfortable in his position with the Church. Shortly after Fisk's meeting with the Personnel Committee, Hoppe-Hugo sent Fisk two Easter cards, one of which was "a risqué card of a mostly naked man." ECF No. 1 at 5, ¶ 30.

In March 2014, prior to the meeting with the Personnel Committee, Fisk missed time at work, with permission from the Church, to deal with family and health issues. Also in March 2014, Hoppe-Hugo chided a co-worker of Fisk's for giving Fisk a book as a gift, saying that he would not be able to read it due to his dyslexia.

On May 20, 2014, the Church terminated Fisk's employment. Fisk was given no warning that he might be fired. The Church did not offer Fisk any performance improvement plan or counseling, and took no disciplinary action against him prior to terminating his employment. The day after Fisk's employment was terminated, the Church sent an email to a "friends and family" email list notifying the recipients that Fisk had been fired, and asserting that the decision was based on "the dramatic deterioration in office relationships, breaches of confidentiality, insubordination, and loss of trust." ECF No. 1 at 5, ¶ 32. Approximately one week later, Hoppe-Hugo sent another email to the same email list inviting discussion within the Church community regarding Fisk's allegations and the termination of his employment.

## II. LEGAL ANALYSIS

The Complaint asserts a total of 28 claims against the Defendants. At oral argument, however, Fisk conceded that Counts Twenty-Two and Twenty-Three, which allege claims for the Breach of the Implied Covenant of Good Faith and Fair Dealing and for Conspiracy, are not recognized causes of action under Maine law. Fisk also conceded that Counts Twenty-Four and Twenty-Five, which allege civil assault and civil battery, are barred by the statute of limitations. Finally, Fisk conceded that Counts Twenty-Six, Twenty-Seven, and Twenty-Eight, which allege Vicarious Liability, Punitive Damages, and Attorney's Fees and Costs, are properly

considered as prayers for relief, rather than independent causes of action. Counts Twenty-Two through Twenty-Eight are therefore dismissed.

## A.    Motion to Dismiss Standard

The Defendants move to dismiss the claims against them under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject-matter jurisdiction and failure to state a claim upon which relief may be granted. To survive a motion to dismiss, the complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotations and alterations omitted). The court should accept all well-pleaded facts as true, while ignoring conclusory legal allegations. *Id.* All reasonable inferences should be drawn in favor of the non-moving party. *Id.* at 16. Determining the plausibility of a claim is a context-specific task that requires the court "to draw on its judicial experience and common sense." *Id.* at 18 (quoting *Iqbal*, 556 U.S. at 679).

## B.    Claims Against the Presbytery

The Complaint premises the Presbytery's liability on its relationship with the Church. Fisk asserts that the two entities qualify as a single employer for purposes of his claims. ECF No. 26 at 5. The allegations in the Complaint that relate to the Presbytery's relationship with the Church are as follows: (1) the Presbytery is a religious non-profit located in New Hampshire; (2) the Presbytery "oversees the Presbyterian Church congregations in Maine"; (3) the Presbytery "provides Maine-based Clerks, Churches, and Clergy with numerous resources to assist and guide them"; (4) the Presbytery "holds events in Maine and otherwise provides services to

individuals and churches within the state of Maine"; and (5) the Church and the Presbytery "were in privity with each other and maintained a commonality of interest."

The First Circuit has recognized three separate tests for determining whether separate entities qualify as a single employer for Title VII purposes: (1) the integrated-enterprise test; (2) the corporate law sham test; and (3) the agency test. *See Torres-Negrón v. Merck & Co., Inc.*, 488 F.3d 34, 42 n.8 (1st Cir. 2007).

The integrated-enterprise test, which is the test applied by a majority of the circuits, *see Romano v. U-Haul Intern*, 233 F.3d 655, 665 (1st Cir. 2000), looks at four factors: (1) common management; (2) interrelation between operations; (3) centralized control over labor relations; and (4) common ownership, *Torres-Negrón*, 488 F.3d at 42. The presence of all four factors is not necessary to find that two entities qualify as a single employer, but special emphasis is placed on the centralized control of labor relations factor. *Id.* None of the facts alleged in the Complaint relate to the Presbytery's involvement in or control over the Church's employment decisions. In addition, there is also no allegation of common management or ownership between the two entities. While a generous reading of the Complaint does permit an inference that some of the operations of the two organizations may be interrelated, this alone does not establish that the two entities should be treated as a single employer under the integrated enterprise test.

The corporate law sham test is applied to determine whether a parent-subsidiary relationship is a sham, disguising the fact that the two entities are in fact one company. *See Mas Marques v. Digital Equip. Corp.*, 637 F.2d 24, 27 (1st Cir.

1980). There are no allegations in the Complaint suggesting that the Presbytery and the Church stand in a parent-subsidiary relationship, and this test is therefore inapplicable.

The agency test looks to common law agency principles to determine if one company is so controlled by the other as to render it effectively the latter's agent. *Id.* Again, none of the allegations in the Complaint give rise to an inference that the Presbytery controls the operations of the Church to the extent necessary to establish an agency relationship.

Read in the light most favorable to the Plaintiff, the Complaint does not set forth sufficient factual allegations to allow the Court to infer that the Presbytery might qualify as Fisk's employer. *Cf. Iqbal*, 556 U.S. at 678. The employment-related claims in the Complaint therefore fail to state a plausible claim for relief against the Presbytery.

In addition, there are no additional factual allegations contained in the non-employment-related claims in the Complaint related to the Presbytery. Thus, there are no allegations of statements, actions, or omissions made or taken by the Presbytery or its employees or agents that might establish liability for Fisk's non-employment-related claims. Fisk has therefore failed to allege sufficient facts for his remaining claims against the Presbytery to satisfy the requirements of Rule 12(b)(6). The Presbytery is accordingly entitled to the dismissal of all claims against it.

**C.    Claims Against the Remaining Defendants**

I address in turn each of the claims in the Complaint against the remaining defendants that has not been waived by Fisk, assessing their sufficiency as against each defendant.

**1.    Count One**

Count One alleges sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

As an initial matter, there is no individual liability under Title VII.  *Fantini v. Salem State College*, 557 F.3d 22, 30-31 (1st Cir. 2009).  Count One is therefore dismissed against Defendants Hoppe-Hugo, Reese, and Warren.

The requirements of Title VII only apply to employers with fifteen or more employees.  42 U.S.C.A. § 2000e(b) (2017).  The Church asserts that it has fewer than the required fifteen employees, a contention that Fisk disputes.  At this stage, there is no factual record on which to determine the answer to this question, and this argument is therefore best reserved for the summary judgment process.

The Church also contends that the Complaint fails to state a claim for either of the two categories of sexual harassment claims recognized under Title VII: quid-pro-quo sexual harassment, where a supervisor uses his or her superior position and threats of retaliation to extract sexual favors from a subordinate; and hostile work environment claims, where sex-based discrimination creates a hostile or abusive working environment for an employee.  *See Xiaoyan Tang v. Citizen's Bank, N.A.*, 821 F.3d 206, 215 (1st Cir. 2016).  Fisk has not alleged any facts related to quid-pro-quo harassment.  To maintain a claim for sexual harassment based on a hostile work

environment, Fisk must show that he was subjected to unwanted harassment that was sufficiently severe or pervasive to alter the conditions of his employment, and that there is a basis for employer liability. *Id.* at 215-16. The legal significance of Warren's status as a volunteer with the Church, rather than an employee, was not briefed by the parties, and Warren's status as a volunteer will therefore not be considered at this stage.

Whether or not a hostile work environment existed is a highly fact-dependent and context-specific inquiry. *See Noviello v. City of Boston*, 398 F.3d 76, 94 (1st Cir. 2005). Specifically, courts shy from evaluating the specific instances of misconduct alleged in a complaint against the legal standard for hostile work environment claims, because there is no "obligation on the pleader to identify in the complaint all the evidence that would later be offered in support of the claim pleaded." *Gorski v. N.H. Dep't of Corr.*, 290 F.3d 466, 474 (1st Cir. 2002); *see also Mayer v. Prof'l Ambulance, LLC*, --- F. Supp. 3d ---, 2016 WL 5678306, at *8 (D.R.I. Sept. 30, 2016) (applying *Gorski* standard post-*Iqbal*). A motion to dismiss is evaluated "with the understanding that notice pleading does not require recitation of detailed evidence in support of the claim." *Gorski*, 290 F.3d at 474. Considered in this light, the Complaint contains sufficient factual allegations to plausibly state a hostile work environment claim. Fisk has alleged that Warren committed multiple acts of unwanted sexual touching and communication, and that the Church did nothing to address his concerns related to these actions, despite being aware of them. Count One plausibly states a claim against the Church.

### 2. Count Two

Count Two alleges disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Fisk alleges that he suffers from dyslexia, and that he suffered an adverse employment action because of his disability.

Individuals who are not themselves employers cannot be held liable under the ADA. *See Román-Oliveras v. P.R. Elec. Power Auth.*, 655 F.3d 43, 52 (1st Cir. 2011). Count Two is therefore dismissed as against Defendants Hoppe-Hugo, Reese, and Warren.

Like Title VII, the ADA applies only to employers with a minimum of fifteen employees. 42 U.S.C.A. § 12111(5)(A) (2017). The Church maintains that it employs fewer than fifteen people, but as discussed above, resolution of that question is best left to the summary judgment process.

The First Circuit has recognized that a plaintiff may maintain a claim for disability harassment under a hostile work environment theory. *See Murray v. Warren Pumps, LLC*, 821 F.3d 77, 86 (1st Cir. 2016). Mindful of the lenient standard set out in *Gorski*, as discussed above, I find that there are sufficient factual allegations in the Complaint to suggest a plausible claim for a hostile work environment claim under the ADA. Fisk alleges that his supervisor "affirmatively and actively derided him for his disability," ECF No. 1 at 7, ¶ 55, and that she made a comment to a co-worker about his inability to read due to his dyslexia, *id.* at 5, ¶ 28. Count Two states a plausible claim against the Church.

### 3.    Count Three

Count Three alleges sex-based discrimination in violation of the Maine Human Rights Act, 5 M.R.S. § 4572.  Claims under the Maine Human Rights Act are governed by the federal standards that govern Title VII.  *Forrest v. Brinker Intern. Payroll Co., LP*, 511 F.3d 225, 228 n.1 (1st Cir. 2007).  Like Count One, therefore, Count Three is dismissed against Defendants Hoppe-Hugo, Reese, and Warren, but not against the Church.

### 4.    Count Four

Count Four alleges disability discrimination in violation of the Maine Human Rights Act.  Similar to Count Three, above, this state law claim will be governed by the federal standards under the ADA.  *See Carmichael v. Verso Paper, LLC*, 679 F. Supp. 2d 109, 123-24 (D. Me. 2010).  As with Count Two, therefore, Count Four is dismissed against Defendants Hoppe-Hugo, Reese, and Warren, but not against the Church.

### 5.    Count Five

Count Five alleges gender-oriented harassment and discrimination under Title VII.  Discrimination based on gender constitutes a claim for sex-based discrimination under Title VII.  *Cf. Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989).  Count Five is therefore redundant of Count One, and is dismissed.

### 6.    Count Six

Count Six alleges unlawful retaliation under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*  Fisk asserts that he was unlawfully terminated because he exercised his right to leave under the FMLA.

The requirements of the FMLA apply only to employers with fifty or more employees. 29 U.S.C.A. § 2611(4)(A)(i) (2017). As noted with respect to Counts One and Two, however, any argument based on whether the Church employed the required number of people must be left to the summary judgment process.

To establish a claim for unlawful retaliation under the FMLA, Fisk must demonstrate: (1) he availed himself of a protected FMLA right; (2) he was adversely affected by an employment decision; and (3) there was a causal connection between his protected conduct and the adverse employment decision. *Carrero-Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 719 (1st Cir. 2014). The only factual allegation in the Complaint that relates to the causation element of Fisk's FMLA claim is that he took time off from work in March of 2014, and his employment was terminated in May of 2014. The First Circuit has made clear, however, that temporal proximity alone is not enough to support an inference of causation for an FMLA retaliation claim. *See Carrero-Ojeda*, 755 F.3d at 720 (affirming dismissal of FMLA retaliation claim where plaintiff provided "no facts beyond the timing of her discharge" to support inference of causation). The factual allegations in the Complaint are therefore not sufficient to state a claim under the FMLA, and Count Six is dismissed.

### 7. Count Seven

Count Seven alleges a violation of the Maine Whistleblowers' Protection Act, 26 M.R.S. § 833. Fisk asserts that Defendants terminated his employment in retaliation for his complaints regarding the alleged harassment by Warren. The decision to terminate Fisk's employment was made shortly after Fisk approached the

Church's Personnel Committee with his complaints about Hoppe-Hugo's handling of his harassment allegations. The close temporal proximity between the two permits the inference that they are causally related. *See LePage v. Bath Iron Works Corp.*, 2006 ME 130, ¶ 19, 909 A.2d 629 (noting that "once the plaintiff has shown a protected activity followed in close proximity by an adverse employment action, this gives rise to an inference that a causal connection is established") (internal quotations and alterations omitted). Count Seven therefore states a plausible claim for relief against the Church. Because there is no individual supervisory liability under the Maine Whistleblowers' Protection Act, however, Count Seven fails to state a claim against Hoppe-Hugo, Reese, and Warren, and must be dismissed as to them. *See Fuhrmann v. Staples Office Superstore East, Inc.*, 2012 ME 135, ¶ 35, 58 A.3d 1083.

### 8. Count Eight

Count Eight alleges retaliation in violation of the Maine Human Rights Act. This claim is based on the same conduct underlying Fisk's Whistleblowers' Protection Act claim, above. The Maine Human Rights Act provides a cause of action for violation of the Whistleblowers' Protection Act, and references the Whistleblowers' Protection Act in the text of the statute. 5 M.R.S.A. § 4572(1)(A) (2017). Count Eight is therefore redundant of Count Seven and is dismissed.

### 9. Count Nine

Count Nine alleges the creation of a hostile work environment in violation of Title VII. This count is redundant of Count One and is therefore dismissed.

### 10.  Count Ten

Count Ten alleges the creation of a hostile work environment in violation of the Maine Human Rights Act.  This count is redundant of Count Three and is therefore dismissed.

### 11.  Count Eleven

Count Eleven alleges unlawful employment discrimination in violation of the Maine Human Rights Act.  Fisk claims that his employment was terminated as a result of his complaints regarding the alleged sexual harassment by Warren.  This claim is therefore redundant of Count Seven and is dismissed.

### 12.  Count Twelve

Count Twelve alleges a common law claim for wrongful discharge, based on Fisk's disability and status as a whistleblower.  Maine's Law Court has declined to recognize a common law tort for wrongful discharge where a statutory scheme exists to vindicate the same right.  *See, e.g., Bard v. Bath Iron Works*, 590 A.2d 152, 156 (Me. 1991) (refusing to recognize wrongful discharge tort where Whistleblowers' Protection Act serves same policy); *Paquin v. MBNA Mktg. Sys., Inc.*, 195 F. Supp. 2d 209, 210-11 (D. Me. 2002) (declining to recognize tort that would be redundant of Maine Human Rights Act).  It is the existence of the relevant statutory scheme, rather than the viability of a particular plaintiff's claim under that scheme, that controls.  *See Smith v. Heritage Salmon, Inc.*, 180 F. Supp. 2d 208, 220 (D. Me. 2002) (refusing to recognize wrongful discharge claim where same policy was vindicated by Whistleblowers' Protection Act, despite fact that plaintiffs did not have a viable claim under the Whistleblowers' Protection Act).  Because the Whistleblowers' Protection

Act and the ADA exist to vindicate the policies underlying Fisk's wrongful discharge claim, Count Twelve is dismissed.

### 13. Count Thirteen

Count Thirteen alleges interference with Fisk's exercise of free expression in violation of the Maine Human Rights Act. This count asserts that Fisk's employment was terminated because he exercised his rights to free expression by complaining about the alleged harassment of Warren. As such, it is redundant of Count Seven and is dismissed.

### 14. Count Fourteen

Count Fourteen alleges defamation, arising out of comments made by Hoppe-Hugo relating to the termination of Fisk's employment. There is a two-year statute of limitations for defamation claims in Maine. *Knowlton v. Shaw*, 708 F. Supp. 2d 69, 76-77 (D. Me. 2010). The statements alleged to constitute defamation were made in two emails sent in May of 2014. The Complaint was filed in September of 2016. Fisk's defamation claim is therefore barred by the statute of limitations and is dismissed.

### 15. Count Fifteen

Count Fifteen alleges a claim for false light, based on the same statements that underlie his defamation claim. Like defamation claims, false light claims are subject to a two-year statute of limitations in Maine. *See Gashgai v. Leibowitz*, 703 F.2d 10, 12-13 (1st Cir. 1983). This claim is therefore barred by the statute of limitations and is dismissed.

### 16. Count Sixteen

Count Sixteen alleges a claim for interference with advantageous economic relations. Fisk asserts that the Church interfered with the possibility of his future employment by other religious organizations in the region, and also caused his employment with the Church to be terminated.

Tortious interference with advantageous economic relations generally does not apply to a contract or other economic relations between the plaintiff and the defendant. *See Beaudoin v. Comm. Partners, Inc.*, 2006 WL 627151, at *1 (Me. Sup. Mar. 3, 2006); *see also* Restatement (Second) of Torts § 766. The tort is instead designed to protect a plaintiff from interference by a person who is not a party to the contract or economic relationship. Fisk's claim therefore fails insofar as it seeks redress for interference with his economic relations with the Church.

Fisk also fails to state a claim for interference with economic relations based on potential employment with other religious organizations. To prove interference with an advantageous relationship, a plaintiff needs to show "the existence of a valid contract or prospective economic advantage, interference with that contract or advantage through fraud or intimidation, and damages proximately caused by the interference." *Harlor v. Amica Mut. Ins. Co.*, 2016 ME 161, ¶ 12, 150 A.3d 793. There are no facts alleged in the complaint that relate to the existence of a prospective economic advantage with another religious organization, or that give rise to an inference that the Defendants interfered with that advantage. Count Sixteen therefore fails to state a plausible claim for relief and is dismissed.

### 17. Count Seventeen

Count Seventeen alleges invasion of privacy.  Fisk asserts that the Defendants invaded his privacy by making statements pertaining to his termination, similar to the defamation and false light claims discussed above.  False light, alleged in Count Fifteen, is a sub-type of the invasion of privacy tort.  *See Veilleux v. Nat. Broad. Co.*, 206 F.3d 92, 131 (1st Cir. 2000).  As discussed above, that claim is barred by the statute of limitations.  The other three species of invasion of privacy tort are: 1) unreasonable intrusion upon the seclusion of another; 2) appropriation of another's name or likeness; and 3) unreasonable publicity given to another's private life.  *See id.*  Fisk has not alleged any facts that relate to these three torts, and therefore fails to state a plausible claim for relief.  Count Seventeen is dismissed.

### 18. Count Eighteen

Count Eighteen alleges intentional infliction of emotional distress.  Fisk asserts that the Defendants, through their statements, actions, and omissions, intentionally or recklessly caused him severe emotional distress.

The Church asserts that this claim is preempted by the Maine Workers' Compensation Act.  The Maine Law Court has held that the Workers' Compensation Act shields employers from tort liability arising out of incidents of sexual harassment, including claims for intentional and negligent infliction of emotional distress, when the harassment at issue is "sufficiently work related."  *See Frank v. L.L. Bean, Inc.*, 352 F. Supp. 2d 8, 11 (D. Me. 2005) (citing *Knox v. Combined Ins. Co. of Am.*, 542 A.2d 363, 366 (Me. 1988)) (quotation marks omitted).  An injury is sufficiently work-related when it is suffered both while and because the employee was at work.  *Id.*  In order

to show that it is entitled to dismissal on this basis, however, the Church must demonstrate that is has secured coverage for its employees under the Workers' Compensation Act. *See* 39-A M.R.S.A. § 104 (2017). At this stage of the proceedings, the Court does not have an evidentiary record from which to determine whether the Church has secured such coverage. The preemption issue is therefore best left for resolution on summary judgment.

In order to succeed on a claim of intentional infliction of emotional distress, Fisk would need to establish that: (1) the Defendants intentionally or recklessly inflicted severe emotional distress; (2) the Defendants' conduct was so extreme or outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society; (3) the Defendants' conduct actually caused Fisk's distress; and (4) the emotional distress suffered by Fisk was so severe that no reasonable person could be expected to endure it. *See Lyman v. Huber*, 2010 ME 139, ¶ 16, 10 A.3d 707. Courts play a gatekeeping role in determining, as a matter of law, whether alleged conduct is sufficiently extreme or outrageous to support a claim for intentional infliction of emotional distress, including at the motion to dismiss stage. *See LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 511 (1st Cir. 1998) (citing *Gray v. State*, 624 A.2d 479, 484 (Me. 1993)).

The statements, actions, or omissions mentioned in the Complaint that can be attributed to the Church, Hoppe-Hugo, and Reese are: (1) Hoppe-Hugo's failure to adequately address Fisk's complaints about Warren; (2) Hoppe-Hugo's statement to Fisk's co-worker that Fisk would be unable to read a book because of his dyslexia; (3) Reese's suggestion that Fisk seek another job after Fisk complained to the Personnel

Committee regarding Hoppe-Hugo's failure to remedy the harassment from Warren; (4) Hoppe-Hugo's sending a "risqué" Easter card featuring a "mostly naked man" to Fisk; and (5) the Church's emails to "friends and family" regarding the purported reasons for Fisk's termination. This alleged conduct, although disturbing, is not sufficiently extreme or outrageous to support a claim of intentional infliction of emotional distress. *See Gavrilovic v. WorldWide Language Res., Inc.*, 2005 WL 3369155, at *25-26 (D. Me. Dec. 8, 2005) (holding sexist insults, failure to prevent sexual harassment, and vulgar, offensive emails insufficient to meet "high" standard for intentional infliction of emotional distress claim); *Berry v. WorldWide Language Res., Inc.*, 716 F. Supp. 2d 34, 52-55 (D. Me. 2010) (finding employer's refusal to provide flight home from war zone in Afghanistan and threats made against employee's family and physical safety insufficient to meet standard); *Baker v. Charles*, 919 F. Supp. 41, 46 (D. Me. 1996) (finding defamatory conduct described as "rude, belligerent, uncivil and vindictive" insufficient to meet "stringent standard"). Count Eighteen is therefore dismissed as against the Church, Hoppe-Hugo, and Reese.

Fisk's claim against Defendant Warren is based on his allegations that Warren: (1) sent Fisk an email offering oral sex; (2) gave Fisk an unwanted massage in the Church office; and (3) pinched Fisk's nipples while Fisk was on the phone. Whether these actions amount to extreme and outrageous conduct sufficient to support a claim for intentional infliction of emotional distress will depend on the details and context of the alleged events. The conduct alleged is not so extreme and outrageous that it would necessarily result in liability, but reasonable people may

differ as to whether, viewed in the context of the relevant surrounding circumstances, the conduct is sufficiently outrageous to support recovery. *See Colford v. Chubb Life Ins. Co. of Am.*, 687 A.2d 609, 616 (Me. 1996) (quoting *Rubin v. Matthews Int'l Corp.*, 503 A.2d 694, 699 (Me. 1986)). In light of the lenient standard at the motion to dismiss stage, it remains plausible that Fisk can prove a factual scenario under which Warren's alleged actions constitute extreme and outrageous conduct. *See Caldwell v. Federal Exp. Corp.*, 908 F. Supp. 29, 34 (D. Me. 1995) (declining to dismiss intentional infliction of emotional distress claim arising out of alleged sexual harassment). Thus, it is plausible that Fisk could demonstrate each of the elements of intentional infliction of emotional distress. Count Eighteen is therefore not dismissed as against Defendant Warren.

### 19. Count Nineteen

Count Nineteen alleges negligent infliction of emotional distress, based on the Defendants' breach of their alleged duty to refrain from making statements that would reflect poorly on Fisk's character and truthfulness.

The claim of negligent infliction of emotional distress requires the existence of a "special relationship" that creates a duty between the actor and the person who is emotionally harmed. *See Curtis v. Porter*, 2001 ME 158, ¶ 19, 784 A.2d 18. The employer-employee relationship does not qualify as a special relationship for purposes of negligent infliction of emotional distress. *See Berry*, 716 F. Supp. 2d at 52. Neither does the relationship between church and church-goer. *See Bryan R. v. Watchtower Bible and Tract Soc. of N.Y., Inc.*, 1999 ME 144, ¶ 32, 738 A.2d 839.

Because Fisk has failed to allege facts that might establish that a special relationship existed between him and any of the Defendants, Count Nineteen is dismissed.

### 20.  Count Twenty

Count Twenty alleges negligent supervision against the Church, Hoppe-Hugo, and Reese, based on their failure to control Warren and prevent him from allegedly harming Fisk.

Similar to negligent infliction of emotional distress, the tort of negligent supervision requires the existence of a special relationship between the plaintiff and the defendant.  *See Dragomir v. Spring Harbor Hosp.*, 2009 ME 51, ¶ 16, 970 A.2d 310.  Such a special relationship may include "fiduciary relationships in which there exists a great disparity of position and influence between the parties."  *Id.* at ¶ 19 (quotation omitted).  Examples include the relationship between a hospital and highly vulnerable psychiatric patients, *see id.* at ¶ 21, or that between a church and a student/altar boy who was sexually abused by a priest, *see Fortin v. The Roman Catholic Bishop of Portland*, 2005 ME 57, ¶ 34, 871 A.2d 1208.

An employment relationship or the relationship between church and church-goer does not satisfy this high standard.  *Cf. Bryan R.*, 1999 ME 144, at ¶¶ 21-22 (no "special relationship" between church and church-goer); *Gniadek v. Camp Sunshine at Sebago Lake, Inc.*, 2011 ME 11, ¶ 22, 11 A.3d 308 (no "special relationship" between summer camp for chronically ill children and campers).  Fisk has failed to plead facts that plausibly demonstrate that a special relationship existed between him and the Defendants for purposes of a negligent supervision claim.  Count Twenty is therefore dismissed.

### 21.  Count Twenty-One

Count Twenty-One alleges that the Church breached the terms of Fisk's employment contract.  Fisk asserts that he was provided with a contract and an employee handbook that contained workplace procedures and policies relating to sexual harassment and workplace safety.  Fisk asserts that despite these alleged contractual terms, the Church failed to adequately address Fisk's concerns related to the alleged harassment by Warren.  Fisk further alleges that he was terminated in violation of the terms of his employment contract.

Though Maine is generally an at-will employment state, *see Libby v. Calais Regional Hosp.*, 554 A.2d 1181, 1182 (Me. 1989), express restrictions contained in a contract or an employee handbook that has been incorporated into the employment contract can restrict the employer's right to terminate an employee, *see Taliento v. Portland W. Neighborhood Planning Council*, 1997 ME 194, ¶ 9, 705 A.2d 696. Furthermore, terms and conditions presented in connection with an offer of employment may be enforceable as part of an employment contract.  *Cf. Whitney v. Wal-Mart Stores, Inc.*, 2004 WL 2792297, at *11 (D. Me. Dec. 3, 2004).  Accepting all factual assertions in the Complaint as true and drawing all inferences in favor of the Plaintiff, as I must at this stage, I find that Fisk has alleged sufficient facts to state a plausible claim for breach of contract against the Church.  Fisk does not allege, however, that Defendants Hoppe-Hugo, Reese, and Warren were parties to the alleged contract, and therefore Count Twenty-One is dismissed as against Hoppe-Hugo, Reese, and Warren.

### III. CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that:

- Defendant Presbytery of Northern New England's Motion to Dismiss (ECF No. 21) is **GRANTED**.

- Defendant Earle Warren's Motion to Dismiss (ECF No. 15) is **GRANTED** with respect to Counts One through Seventeen and Nineteen through Twenty-Eight, and is **DENIED** with respect to Count Eighteen.

- Defendant Mid Coast Presbyterian Church's Motion to Dismiss (ECF No. 14) is **GRANTED** with respect to Counts Five, Six, Eight through Twenty, and Twenty-Two through Twenty-Eight, and **DENIED** with respect to Counts One through Four, Seven, and Twenty-One.

- Defendant Diane Hoppe-Hugo's Motion to Dismiss (ECF No. 14) is **GRANTED**.

- Defendant Richard Reese's Motion to Dismiss (ECF No. 14) is **GRANTED**.

**SO ORDERED.**

**Dated this 4th day of May 2017**

_____
 **/s/ JON D. LEVY**
 **U.S. DISTRICT JUDGE**
